## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREDDIE E. SINKLER,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:19-cv-1211** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **WARDEN BRIAN** | : | |
| **S. CLARK,** *et al.*, | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This matter is before the Court pursuant to the motion for summary judgment (Doc. No. 60) filed by Defendants CO Lake ("Lake") and CO McManara ("McManara"). Despite being directed to do so (Doc. No. 63), *pro se* Plaintiff Freddie E. Sinkler ("Plaintiff") has filed neither a response nor a motion seeking an extension of time to do so. Accordingly, because the time for filing a response has expired, the motion for summary judgment is ripe for disposition.

## I. BACKGROUND

Plaintiff, who was recently released from incarceration, initiated the above-captioned action on July 15, 2019 by filing a complaint pursuant to 42 U.S.C. § 1983, while incarcerated at the Dauphin County Prison ("DCP") in Harrisburg, Pennsylvania, against Defendants McManara, Lake, Warden Brian S. Clark ("Clark"), Officer Brant ("Brant"), Officer Deng ("Deng"), and Security Officer Robert Lucas ("Lucas"). (Doc. No. 1.) Plaintiff avers that on May 31, 2019, while

he was incarcerated at the Dauphin County Prison ("DCP"), Defendant McManara brought him an electric shaver to use to perform the Fitra shave, an Islamic obligation to be performed during Ramadan. (*Id.*) Plaintiff asked Defendant McManara where he should shave because there are no private electrical outlets. (*Id.*) Defendant McManara checked all of the sockets and determined that only one worked. (*Id.* at 3.) That socket was located "on the block in front of . . . everyone, including staff members and a glass door that the public can see through." (*Id.*) The area was also in sight of two cameras. (*Id.*)

Defendant McManara made the control officer aware that only one socket was working and asked if there was somewhere private that Plaintiff could shave. (*Id.*) Defendant Lake responded that Plaintiff had a choice between using the available socket or never shaving. (*Id.*) Plaintiff maintains that in order to meet his religious obligation, he was forced to expose himself and perform his "obligatory shave/cleansing." (*Id.*) As relief, Plaintiff seeks damages as well as a transfer from the DCP. (*Id.*)

In a Memorandum and Order dated August 13, 2019, the Court granted Plaintiff leave to proceed *in forma pauperis* and dismissed his claims against Defendants Clark, Brant, Deng, and Lucas for failure to state a claim against them. (Doc. Nos. 9, 10.) The Court granted Plaintiff thirty (30) days to file an amended

complaint and noted that if he failed to do so, the Court would direct service of his original complaint upon Defendants McManara and Lakes. (*Id.*) Plaintiff did not file an amended complaint, and so in an Order dated September 17, 2019, the Court directed the Clerk of Court to effect service of the complaint upon Defendants McManara and Lakes. (Doc. No. 12.)[1]

On November 20, 2019, the summons issued to Defendant Lake was returned as unexecuted with a note that Defendant Lake was no longer employed at DCP. (Doc. No. 24.) Defendant McManara filed a motion to dismiss on December 6, 2019. (Doc. No. 26.) In a Memorandum and Order dated February 25, 2020, the Court granted in part and denied in part the motion to dismiss. (Doc. Nos. 38, 39.) Specifically, the Court granted the motion with respect to Plaintiff's claims for injunctive relief and denied the motion with respect to Plaintiff's claims for monetary damages. (*Id.*) The Court also directed Plaintiff to show cause within thirty (30) days why Defendant Lake should not be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (*Id.*)

---

[1] On September 23 and 24, 2019, the Court received three (3) letters from Plaintiff concerning the dismissal of Defendants Clark, Brant, Deng, and Lucas. (Doc. Nos. 15, 16, 17.) In an Order dated September 26, 2019, the Court construed the letters as a motion for reconsideration and denied the motion. (Doc. No. 18.)

Plaintiff filed a response to the Court's show cause Order on March 4, 2020. (Doc. No. 40.)  In an Order entered that same day, the Court directed counsel for Defendant McManara to provide under seal any information he may have concerning Defendant Lake's whereabouts.  (Doc. No. 43.)  Defendant McManara filed his answer on March 10, 2020 (Doc. No. 44) and his response to the Court's March 4, 2020 Order on March 11, 2020 (Doc. No. 45).  Defendant Lake was served with Plaintiff's complaint on May 14, 2020 (Doc. No. 50) and filed an answer to the complaint on June 4, 2020 (Doc. No. 53).

After receiving an extension of time to complete discovery (Doc. Nos. 57, 58), Defendants filed their motion for summary judgment on February 22, 2021 (Doc. No. 60) and their brief in support thereof on March 8, 2021 (Doc. No. 62). Defendants argue that Plaintiff failed to exhaust his administrative remedies prior to filing suit.  (Doc. No. 62.)  In its March 8, 2021 Order, the Court informed the parties, that pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), it would consider the exhaustion issue in the context of summary judgment, and by doing so, would consider matters outside the pleadings in its role as factfinder.  (Doc. No. 63.) Accordingly, the Court directed Plaintiff to respond to Defendants' motion within twenty-one (21) days.  (*Id.*)  Despite the Court's Order, Plaintiff has not responded to the motion for summary judgment.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may

not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party

6

opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant.  These rules apply with equal force to all parties.  *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III.   STATEMENT OF MATERIAL FACTS[2]

Plaintiff was committed to DCP for drug-related offenses on March 6, 2019. (Doc. No. 61 ¶ 1.)  He was incarcerated at DCP until August 22, 2019, when he was transferred to the State Correctional Institution in Huntingdon, Pennsylvania ("SCI Huntingdon").  (*Id.* ¶ 2.)

The inmate grievance procedure at DCP consists of four (4) stages.  (*Id.* ¶ 3.)  First, an inmate "must submit his grievance to the Warden, Deputy Warden, or Security Major."  (*Id.* ¶ 4.)  The Warden rules on grievances at the first level.  (*Id.*)

---

[2] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  *Id.*  Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  *See id.*  Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of material facts.  (Doc. No. 61.)

Plaintiff did not file a response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1.  However, he has filed a verified complaint, which may be treated as an affidavit in opposition to summary judgment.  *See Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003) (noting that "the complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)"); *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion); *see also Boomer v. Lewis*, No. 06-850, 2009 WL 2900778, at *2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge.").  However, this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."  *Hammonds v. Collins*, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing *Brooks v. Am. Broad. Co.*, 999 F.2d 167, 172 (6th Cir. 1993)).  Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to be undisputed.  *See* M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

If the Warden denies an inmate's grievance, the inmate "may appeal to the Chairman of the Dauphin County Prison Board (Second Level)." (*Id.* ¶ 6.) "If the Chairman affirms the denial of a grievance, the inmate may appeal to the full Prison Board (Third Level)." (*Id.* ¶ 7.) If the full Prison Board "affirms the denial of a grievance, the inmate may appeal to the Dauphin County Solicitor (Fourth Level)." (*Id.* ¶ 8.) "There is no further appeal from the Solicitor's decision, which is considered 'final' under the grievance procedure." (*Id.* ¶ 9.)

Plaintiff "alleges in his complaint that while incarcerated at DCP, his First Amendment right to free exercise of religion was violated because he was allegedly burdened in the performance of his Fitra shave, an Islamic cleanliness obligation." (*Id.* ¶ 10.) On May 31, 2019, Plaintiff "filed a grievance regarding the alleged interference with his Fitra shave." (*Id.* ¶ 11.) Lieutenant Mark Poligone attempted to interview Plaintiff regarding his grievance on July 2, 2019. (*Id.* ¶ 12.) During the interview, "Plaintiff advised Lt. Poligone that he did not wish to pursue the May 31, 2019 grievance because he intended to file a civil action against Director Clark and CO Lake." (*Id.* ¶ 13.) Because of this, Lieutenant Poligone deemed Plaintiff's grievance to be without merit. (*Id.* ¶ 14.)

On July 25, 2019, "Ryan Readinger, Treatment Specialist at [DCP], was asked to deliver the July 2, 2019 grievance decision to Plaintiff." (*Id.* ¶ 15.) Plaintiff

refused to accept or receive his copy.  (*Id.* ¶ 16.)  Readinger explained to Plaintiff that "by accepting the grievance decision and signing that he received the grievance decision he was only acknowledging receipt of the decision."  (*Id.* ¶ 17.)  He further explained "that signing and accepting the grievance decision was not an acknowledgment that he agreed with the grievance decision."  (*Id.* ¶ 18.)  Readinger told Plaintiff "that the July 2, 2019 grievance decision explained, in writing, how he could appeal the decision, and how to request further review of his grievance."  (*Id.* ¶ 19.)  Plaintiff, however, "again refused to accept his copy of the July 2, 2019 grievance decision and refused to sign his copy of the decision."  (*Id.* ¶ 20.)  "Plaintiff did not file for any additional review of his grievance in accordance with steps two through four of the grievance review process at DCP."  (*Id.* ¶ 21.)

## IV.    DISCUSSION

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action.  *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").  Moreover, while Plaintiff was released from prison after filing the above-captioned case, he is still bound by the exhaustion requirement because he has raised claims concerning events that occurred prior to his release. *See Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002).

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement.  *See Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000).  Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court. *See id.*   Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court.  *See Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill

11

the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").  Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court.  *See, e.g., Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement.  *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires."  *See Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," *see Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate."  *See Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from

strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused.  An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement.  *See Harris*, 149 F. App'x at 59.  Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him.  *See Warman*, 49 F. App'x at 368.  Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust.  *See Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused. *See Ross v. Blake*, 136 S. Ct. 1850 (2016).  The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  *See id.* at 1859.  First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently

unwilling to provide any relief to aggrieved inmates." *See id.*  Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use."  *See id.*  Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." *See id.* at 1860.  However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018).  The Third Circuit recently established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

*Hardy v. Shaikh*, 959 F.3d 578, 588 (3d Cir. 2020).

Defendants maintain that they are entitled to summary judgment with respect to Plaintiff's claim because he did not properly exhaust his administrative remedies. (Doc. No. 62.)  In support of their argument, Defendants have provided an affidavit from Lieutenant Poligone.   (Doc. No. 61-2.)   He avers that Plaintiff expressed familiarity with the grievance procedure at DCP but that he did not wish to discuss his grievance further because he intended to file a civil lawsuit.  (*Id.* ¶¶ 13-15.)

14

Because Plaintiff refused to participate, Lieutenant Poligone "considered the investigation closed and determined that [Plaintiff's] grievance was unfounded." (*Id.* ¶ 22.) Defendants have also submitted an affidavit from Ryan Readinger. (Doc. No. 61-4.) He avers that he explained the grievance appeal process to Plaintiff, but that Plaintiff refused to accept his copy of the July 2, 2019 grievance decision. (*Id.*)

Plaintiff has not responded to Defendants' motion for summary judgment. In his complaint, however, Plaintiff states that he did not receive a response to his grievance. (Doc. No. 1 at 2.) Plaintiff's conclusory allegation, without any accompanying evidence, does not create a genuine issue of material fact with respect to exhaustion. *See Maclary v. Carroll*, 142 F. App'x 618, 620 (3d Cir. 2005) (concluding that inmate-plaintiff's allegation that he filed unanswered and unprocessed grievances did not create a genuine issue of material fact because he failed to offer any support for his bare assertions); *Keys v. Caroll*, No. 10-cv-1570, 2012 WL 4472020, at *8 (M.D. Pa. Sept. 26, 2012) (concluding that inmate-plaintiff's reliance on the complaint, deposition testimony, and affidavit that he exhausted his administrative remedies was not sufficient to withstand summary judgment because the allegations were conclusory and made without evidentiary support). Moreover, Plaintiff's transfer from DCP to SCI Huntingdon shortly after initiating the above-captioned case does not excuse his exhaustion requirement. *See*

15

*Williamson v. Wexford Health Sources, Inc.*, 131 F. App'x 888, 890 (3d Cir. 2005) (affirming grant of summary judgment for failure to exhaust where the inmate-plaintiff was transferred to a different facility after filing an administrative claim, which he did not appeal).

Plaintiff, therefore, has not refuted the defense that he failed to properly exhaust his First Amendment claim against Defendants McManara and Lake. Moreover, Plaintiff has provided no evidence suggesting that the grievance procedure at DCP was rendered unavailable to him. Accordingly, because the PLRA requires full and proper exhaustion prior to the initiation of Plaintiff's claims in federal court, and this Court cannot excuse compliance with those requirements, Defendants' motion for summary judgment will be granted on the basis that Plaintiff failed to properly exhaust his administrative remedies as to his claims against them.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 60) will be granted. An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Date: April 1, 2021

16